**PROBABLE CAUSE AFFIDAVIT**
**ROBERTS, IRA**

I, John Ypsilantis, being duly sworn, depose and state that:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and, acting as such, I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws.

2. I entered on duty at the FBI Academy in Quantico, Virginia on May 14, 2017. I am currently assigned to the to the FBI Cincinnati Division (Columbus Resident Agency) Southern Ohio Safe Streets Task Force (the "SOSSTF"). I have been assigned to this squad since November 2023. From January 2021 until October 2023, your Affiant was assigned to the FBI Cincinnati Division (Columbus Resident Agency) Joint Terrorism Task Force. From October of 2017 until January 2021, your Affiant was assigned to the FBI Pittsburgh Division Greater Pittsburgh Safe Streets Task Force. I was employed as a U.S. Border Patrol Agent with the Department of Homeland Security (DHS) Customs and Border Protection (CBP) from July 23, 2009, to May 13, 2017. From January 2012 until May 2017 your Affiant was assigned as a full time Task Force Officer (TFO) to the FBI Cleveland Division Organized Crime Task Force.

3. During the course of my employment as an FBI Special Agent, FBI TFO, and U.S. Border Patrol Agent, I have participated in numerous complex criminal, national security, and international and domestic terrorism investigations, as well as investigations of criminal organizations involved in both the manufacturing and distribution of controlled substances. I have also participated in numerous investigations involving the use of federal and state search warrants to collect evidence, including controlled substances, the seizure of narcotics-related records, and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources including physical and electronic surveillance, various types of infiltration (including undercover agents, informants, and cooperating sources), pen register and trap and trace devices, GPS and telephone tracking devices, trash covers, mail covers, pole cameras, stationary video recordings, and audio/video recording and transmitting devices. Additionally, I have personally participated in Title III wiretap investigations, pursuant to 18 U.S.C. § 2516, in the Northern District of Ohio (NDO) and the Western District of Pennsylvania (WDPA).

4. In addition to the training I received at the FBI Academy and the U.S. Border Patrol Academy, I have received specialized training from the FBI and DHS/CBP focused on topics such as drug interdiction, drug detection, money-laundering techniques and schemes, drug identification, asset identification and removal, and methods utilized by organized criminal enterprises and drug trafficking organizations to carry out the aforementioned criminal conduct.

5. The facts set forth within this affidavit come from your Affiant's own personal involvement with the investigation, as well as information provided by other law enforcement officers and reports.

**PROBABLE CAUSE AFFIDAVIT**
**ROBERTS, IRA**

The information outlined below does not contain all details or all facts of which I am aware relating to this investigation, but rather is provided for the limited purpose of establishing probable cause that Ira ROBERTS committed this offense.

**FACTS**

6. This investigation is the result of efforts by the FBI, the Bureau of Alcohol, Tobacco, and Firearms (ATF) Crime Gun Intelligence Center (CGIC) Task Force (TF), Columbus Division of Police (CPD), Franklin County Sheriff's Office (FCSO), and other federal and local law enforcement agencies (LLEA) to investigate and prosecute individuals involved and/or associated with Ira ROBERTS and others known and unknown in regards to conspiring with others to distribute a controlled substance. As described within, law enforcement has become aware that ROBERTS is currently engaged in narcotics trafficking in the Columbus, Ohio area.

7. Your Affiant has reviewed a copy of ROBERTS' computerized criminal history and has found that ROBERTS has prior drug and violence related arrests and/or convictions to include: 1999 – Robbery, 2000 – Felonious Assault, 2005 – Felony Possession of Drugs, 2008 – Felony Distribution of Cocaine Base, 2024 – Felonious Assault, 2024 – Weapons Under Disability.

8. In or around January 4, 2024, February 9, 2024, February 20, 2024, March 8, 2024, April 2, 2024, April 25, 2024, and May 29, 2024, your Affiant participated in seven separate controlled purchases of narcotics made by a Confidential Human Source (CHS). During each of these above-mentioned controlled purchases, the CHS met and obtained a quantity of suspected cocaine from ROBERTS or an associate of ROBERTS at the apartment complex located at 3400 Camp Chase Drive, Columbus, Ohio 43204.

9. On June 26, 2024, a Magistrate Judge in the Southern District of Ohio signed an order authorizing the disclosure of information, to include SMS text message content, related to the cellular telephone number (614) 446-1283, which your Affiant is aware ROBERTS utilizes to facilitate drug transactions. The authorization for the disclosure of information, to include SMS text message content, related to the cellular telephone number (614) 446-1283 was from approximately May 18, 2024, through June 26, 2024. The above-mentioned SMS text message content has been reviewed by your Affiant.

10. In summary, during the above-mentioned time period, the content of numerous pertinent SMS text message communications shows that ROBERTS and others known and unknown are actively engaged in the distribution of cocaine. The examples identified below are only some of the SMS text message communications that were disclosed, and the descriptions of the communications reflect your Affiant's interpretation and explanation of the SMS text message communications. Your Affiant believes that these descriptions are accurate, based on your Affiant's training and experience, and your Affiant's knowledge from this investigation.

**PROBABLE CAUSE AFFIDAVIT**
**ROBERTS, IRA**

11. A review of the SMS text message content revealed that on May 26, 2024, beginning at approximately 1:13 PM, ROBERTS, engaged in the following text message conversation, via (614) 446-1283, with Isaiah BURNLEY, who was utilizing cellular telephone assigned call number (614) 202-7283:

    ROBERTS:   "Do you have your own now"

    ROBERTS:   "Hope I can get it for 81"

    ROBERTS:   "I will be ready for you tonight or tomorrow on the half"

    BURNLEY:   "Idk about 81"

    ROBERTS:   "Why not bro you said 450"

    BURNLEY:   "My math was off. I gotta get at least 85"

    BURNLEY:   "That's like 470"

    ROBERTS:   "If it's 475 then that's 8550 "

    ROBERTS:   "Okay that's cool"

    ROBERTS:   "I can do that bro"

    ROBERTS:   "We could do 85 straight out"

    ROBERTS:   "If I don't have all the cash can I do some on cash app and you can get it off with your people it won't be that much but I might have all the cash"

    ROBERTS:   "I will hit you up either tonight or tomorrow hopefully tonight get it cracking"

    ROBERTS:   "I got people that cook it and shoot it make sure it's 100 cuz I had one complaint they don't like that batch but everybody else did so I don't know"

    ROBERTS:   "One out of 50 said they didn't like it

12. Based on you Affiant's training and experience, and your Affiant's knowledge from this investigation, during the above-referenced communications, ROBERTS contacts BURNLEY and inquires if BURNLEY has his own supply of cocaine. ROBERTS further advises BURNLEY that ROBERTS wants to obtain approximately one-half kilogram of cocaine for $8,100 dollars as previously discussed with BURNLEY. Additionally, ROBERTS advises BURNLEY that ROBERTS will be ready to purchase approximately one-half kilogram of cocaine either later that evening or the next day. BURNLEY advises ROBERTS that he will not be able to sell ROBERTS the approximately one-half kilogram of cocaine for the previously brokered price of $8,100 dollars. IRA questions BURNLEY as to why the change in price and states that BURNLEY had previously quoted ROBERTS the price per ounce of cocaine would be $450 dollars. BURNLEY advises

**PROBABLE CAUSE AFFIDAVIT**
**ROBERTS, IRA**

ROBERTS that BURNLEY's math was incorrect, and BURNLEY would need to charge ROBERTS at least $8,500 dollars for the approximate one-half kilogram of cocaine. BURNLEY further advises ROBERTS that at the $8,500 price BURNLEY is quoting ROBERTS for the approximate one-half kilogram of cocaine would entail the cost per ounce to be $470 dollars. ROBERTS advises BURNLEY that at $475 dollars per ounce of cocaine, approximately one-half kilogram of cocaine would be $8,550. ROBERTS agrees that he (ROBERTS) can purchase approximately one-half kilogram cocaine from BURNLEY for $8,500 dollars. ROBERTS further asks BURNLEY if he (ROBERTS) doesn't have all the cash available to purchase the cocaine would BURNLEY would be amenable to receive some of the currency needed to complete the cocaine transaction through CashApp. ROBERTS then advises BURNLEY that he (ROBERTS) may have all the cash needed for the purposed cocaine transaction. ROBERTS advises BURNLEY that he (ROBERTS) will contact BURNLEY either that evening or the next day in order to conduct the cocaine transaction but hopefully it will be that evening. Additionally, ROBERTS tells BURNLEY that some of his (ROBERTS) cocaine customers produce cocaine base from the cocaine they purchase from ROBERTS and ROBERTS wants BURNELY to ensure that the cocaine ROBERTS purchases from BURNLEY is high quality in order for ROBERTS' customers to produce the desired cocaine base. Further ROBERTS advises BURNLEY that one of ROBERTS' customers had complained that the quality of cocaine from the last supply of cocaine ROBERTS obtained from BURNLEY was low quality. ROBERTS explains that this complaint regarding the quality of cocaine was only from one of his (ROBERTS') cocaine customers and that ROBERTS' other customers were pleased with the quality of the cocaine from the last cocaine supply ROBERTS purchased from BURNLEY. ROBERTS advised BURNLEY that one cocaine customer complaining out of 50 cocaine customers was not bad.

13. A review of the SMS text message content revealed that on June 4, 2024, beginning at 12:19 AM, ROBERTS engaged in the following text message conversation with Jeremy COVERDALE, who was utilizing cellular telephone assigned call number (614) 517-4496.

   ROBERTS: "I ran through at least two breaks of months bro "

   ROBERTS: "A lot of motherfuckers can't do that"

   ROBERTS: "Seventy two zips"

   COVERDALE: "That's a lot fr you be doing numbers fr fr"

   ROBERTS: "I swear a lot of people don't know that.. They know I moved but they don't know like that"

   ROBERTS: "So he ain't trying to lose me or a friendship but at the end of the day he wouldn't lose me as a friendship because I know he's going to make it right"

   ROBERTS: "And that's why lowered the price with you "

**PROBABLE CAUSE AFFIDAVIT**
**ROBERTS, IRA**

    ROBERTS: "Make sure you delete your messages. I always delete mine on this end"

    COVERDALE: "You already know I'm doin it now"

14. Based on your Affiant's training and experience, and your Affiant's knowledge from this investigation, during the above-referenced communications, ROBERTS tells COVERDALE that he (ROBERTS) traffics at least approximately two (2) kilograms of cocaine a month and other drug traffickers cannot move that amount of cocaine. COVERDALE responds telling ROBERTS that he (ROBERTS) is trafficking a large amount of cocaine every month. ROBERTS tells COVERDALE that most people do not know how significant a cocaine trafficker he (ROBERTS) is and that is why ROBERTS will lower the price of cocaine for COVERDALE. ROBERTS instructs COVERDALE to delete all of COVERDALE's text message communications related to drug trafficking so that law enforcement cannot retrieve them. COVERDALE affirms and advises ROBERTS that he (COVERDALE) already deleted the text message communications related to drug trafficking between himself (COVERDALE) and ROBERTS.

15. A review of the SMS text message content revealed that on June 25, 2024, beginning at approximately 11:28 AM, ROBERTS, engaged in the following text message conversation, via (614) 446-1283, with BURNLEY, who was utilizing cellular telephone assigned call number (614) 202-7283:

    ROBERTS:   "Let me know. Should I go get the money now or what?"

    ROBERTS:   "Because I only got enough for 4. And 1/2"

    BURNLEY:   "On my way "

    ROBERTS:   "Ok"

    ROBERTS:   "I'm here waiting "

    ROBERTS:   "Well, you're 30 minutes always turns into like 3 days."

    ROBERTS:   "I got to call my other people bro"

    ROBERTS:   "You're supposed to be $30 yesterday. Because I had.\n To get do $30 for gas. For taking me out North when you never even showed. Then you say you're going to be here at 12 and it's 2 o'clock."

    BURNLEY:   "Wilson"

    ROBERTS:   "Manager was still on the freeway."

    ROBERTS:   "Ha"

    ROBERTS:   "Man your ass*"

**PROBABLE CAUSE AFFIDAVIT**
**ROBERTS, IRA**

BURNLEY:   "5 min or less "

16. Based on your Affiant's training and experience, and your Affiant's knowledge from this investigation, during the above-referenced communication, ROBERTS contacts BURNLEY and advises BURNELY if he (ROBERTS) should obtain the necessary money to purchase the approximately four and a half ounces of cocaine as he (ROBERTS) currently only has enough money to purchase approximately four and a half ounces of cocaine. BURNLEY affirms and advises ROBERTS he (BURNLEY) is on his (BURNLEY) way to meet IRA to conduct the cocaine transaction. IRA affirms and advises BURNLEY that he (ROBERTS) is waiting. ROBERTS jokingly tells BURNLEY that BURNLEY is never on time and if BUNREY doesn't come, ROBERTS will contact his (ROBERTS') alternate cocaine source of supply in order to obtain cocaine. ROBERTS jokingly tells BURNELY that he (BURNLEY) owes ROBERTS $30 dollars for gas from ROBERTS attempting to meet BURNELY yesterday and not showing up. ROBERTS again jokingly tells BURNLEY that BURNLEY is never on time. BURNLEY advises ROBERTS he (BURNLEY) is on Wilson Road and will meet ROBERTS in less than five minutes to resupply ROBERTS with cocaine.

17. Your Affiant conducted a review of pole camera surveillance footage from June 25, 2024, at the apartment complex located at 3400 Camp Chase Drive, Columbus, Ohio 43204. This location is the same where the majority of the above-mentioned controlled purchases of narcotics occurred as well as where ROBERTS resides and/or conducts drug trafficking activity. Based on this review, at approximately 3:31 PM on June 25, 2024, your Affiant observed BURNLEY arrive at the apartment complex, meet ROBERTS, and enter apartment A2 with ROBERTS. At approximately 3:34 PM on June 25, 2024, your Affiant observed BURNLEY exit apartment A2 alone and walk towards the Camp Chase Drive side of the apartment complex out of the view of the pole camera and was believed to have departed the area.

18. Based on your Affiant's training and experience, as well as your Affiant's knowledge of this investigation it is your Affiant's belief that the above-mentioned meeting between ROBERTS and BURNLEY involve the coordination of drug trafficking activity where BURNLEY supplied ROBERTS with approximately four and a half ounces of cocaine.

19. Your Affiant is also aware that in or around November 6, 2024, BURNLEY was arrested by Columbus Division of Police (CPD) Gang Enforcement Unit (GEU) for numerous state related felonies to include but not limited to Felony- Engage In a Pattern of Corrupt Activity, Felony - Participating In a Criminal Gang, Felony – Aggravated Trafficking In Drugs, Felony – Possession of Drugs, Felony – Failure to Comply With Order or Signal of Police, and Felony – Weapons Under Disability.

20. Further, on October 31, 2024, your Affiant was advised by CPD that a shooting incident occurred at the apartment complex located at 3400 Camp Chase Drive, Columbus, Ohio. This location is the same apartment complex where the majority of the above-mentioned controlled purchases of narcotics occurred as well as where ROBERTS resides.

**PROBABLE CAUSE AFFIDAVIT**
**ROBERTS, IRA**

21. Your Affiant has since conducted a review of pole camera surveillance footage from this date. Based on this review, at approximately 12:38 PM on October 31, 2024, your Affiant observed ROBERTS exiting apartment A3 of the target location and walk/run toward the direction of a group of individuals during, what appears to be, an altercation. ROBERTS then appeared to discharge a suspected firearm in the last observed direction of said group. ROBERTS then returned to apartment A3 where he (ROBERTS) retrieved a separate suspected firearm. Shortly thereafter, ROBERTS was observed pointing the suspected firearm and again discharging multiple rounds in the last observed direction of the group of individuals. Your Affiant has been advised by CPD Felonious Assault Unit (FAU) Detectives that one (1) of the individuals in the group was struck by a round and treated for injuries. Additionally, ROBERTS was arrested and charged with four (4) counts of Felonious Assault and two (2) counts of Weapons Under Disability as a result of the above-mentioned incident.

22. Based on this information, your affiant believes probable cause exists that ROBERTS conspired to distribute a controlled substance in violation of Title 21, United States Code, 846 and the aforementioned offense occurred in Franklin County, Ohio, in the Southern Judicial District of Ohio.

_John Ypsilantis_
FBI SA John Ypsilantis

Nov. 13, 2024
Sworn to and subscribed before me this day of _____,_____, at_____ Columbus, Ohio.

_Kimberly A. Jolson_
Kimberly A. Jolson
United States Magistrate Judge